UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CLAUDIO ARROYO SILVA, *et al.*,

Petitioners,

v.

LAURA HERMOSILLO, *et al*.,

Respondents.

CASE NO. 2:26-cv-00179-GJL

ORDER GRANTING PETITION
FOR WRIT OF HABEAS CORPUS

Petitioners Claudio Arroyo Silva, Amadu Barri, Eliedson Dos Santos-Reis, Eduardo Renteria Godines, and Jimmy Sanchez Aguilar (collectively "Petitioners") are currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1. On January 16, 2026, Petitioners, through counsel, filed a Petition for writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release from immigration detention and injunctive relief. *Id.*

Respondents to the Petition include Laura Hermosillo (Acting Field Office Director for ICE's Seattle Field Office), Bruce Scott (Warden of the NWIPC), U.S. Department of Homeland Security ("DHS"), Kristi Noem (DHS Secretary), and Pamela Bondi (U.S. Attorney General)

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 1

(collectively "Respondents"). The Petition has been fully briefed. Dkts. 1, 12, 19. The parties have consented to proceed in this matter before a United States Magistrate Judge. Dkt. 10.

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **GRANTS** the Petition and **ORDERS** Petitioners' immediate release and permanent injunctive relief as set forth below.

## I.     FACTUAL BACKGROUND

The particular facts for each Petitioner are addressed below. The undisputed facts common to all Petitioners are these: Petitioners, who are noncitizens, were previously detained and released from immigration custody on their own recognizance. After living months or years in the United States, Petitioners were re-detained without pre-deprivation notice and hearing.[1]

**A.     Petitioner Claudio Arroyo Silva**

Petitioner Arroyo Silva is a native and citizen of Mexico who entered the United States in or around 1990 without lawful status. Dkt. 5 at ¶¶ 1–2; Dkt. 14 at ¶¶ 3, 5; *see also* Dkt. 4-1; Dkt. 4-2. On September 10, 2012, Petitioner was arrested by Portland ICE Enforcement and Removal Operations ("ERO") following a criminal arrest for driving under the influence. *See* Dkt. 5 at ¶¶ 2, 6 (stating that the underlying criminal charge was later dismissed); Dkt. 14 at ¶ 5; Dkt. 4-1. Shortly thereafter, Petitioner was charged as removable under Section 212(a)(6)(A)(i) of the INA and began removal proceedings. *See* Dkt. 4-1; Dkt. 14 at ¶ 5.

---

[1] Petitioner Amadu Barri received a bond hearing on January 21, 2026. *See infra* Sect. I.A. However, this hearing occurred after Petitioner was re-detained and absent an individual bond determination; rather, the IJ determined that detention was mandatory and declined to make alternative findings as to his bond eligibility. Additionally, Respondents submit that Petitioner Jimmy Sanchez Aguilar was scheduled to receive a post-arrest bond hearing on February 3, 2026, but the record contains no information regarding the results of that hearing. *See infra* Sect. I.E. Thus, the Court assumes that Petitioner Sanchez Aguilar remains detained at NWIPC without an individualized bond determination.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 2

As part of those proceedings, Petitioner was transferred to Tacoma, Washington, where he received a bond hearing before an Immigration Judge ("IJ") on October 1, 2012. *See* Dkt. 5 at ℙ 2; Dkt. 14 at ℙℙ 6–7. Petitioner posted the required bond and was released on his own recognizance that same day. Dkt. 5 at ℙ 2; Dkt. 14 at ℙ 7.

Ten months later, Petitioner's removal proceedings were administratively closed, so that he could seek collateral relief with the U.S. Citizenship and Immigration Services ("USCIS") via a Petition for Alien Relative, Form I-130 (also referred to as an "I-130 family petition") filed by his spouse, who is a United States citizen. Dkt. 5 at ℙ 4; Dkt. 14 at ℙ 8.

In the years following the administrative closure of his removal proceedings, Petitioner continued seeking legal status. Dkt. 5 at ℙ 4. He attests that his I-130 family petition was approved, that he received an I-601A inadmissibility waiver, and that he was awaiting a consular interview as part of that process. *Id.*

In May 2025, DHS sought to re-open Petitioner's removal proceedings. Dkt. 14 at ℙ 10; Dkt. 13-3. On November 15, 2025, while Petitioner was out to dinner with his family, he was encountered by ERO, arrested in the restaurant parking lot, and taken to the NWIPC. Dkt. 5 at ℙℙ 5, 7; Dkt. 4-2; Dkt. 14 at ℙ 11; Dkt. 13-2. Four days later, an IJ granted DHS's motion to re-open removal proceedings, and Petitioner remains detained at NWIPC. Dkt. 14 at ℙℙ 12, 17.

**B.      Petitioner Amadu Barri**

Petitioner Barri is a native and citizen of Guinea Bissau who fled political persecution and entered the United States without lawful status on February 28, 2023. Dkt. 6 at ℙ 1; Dkt. 17 at ℙ 3. On the same day, Petitioner was encountered by United States Border Patrol, detained, and charged as removable under Section 212(a)(6)(A)(i) of the INA. Dkt. 6 at ℙ 2; Dkt. 17 at ℙ 4. On March 1, 2023, Petitioner was released from immigration detention on his own recognizance

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 3

and instructed to comply with certain release conditions. Dkt. 6 at ¶ 2; Dkt. 17 at ¶ 5. Petitioner was also referred to ERO for enrollment in the Alternatives to Detention ("ATD") program. *Id.*

While released, Petitioner filed a timely application for asylum and was scheduled to receive a hearing on that application in November 2026. Dkt. 6 at ¶ 4; Dkt. 4-3; Dkt. 4-4; Dkt. 17 at ¶ 7. Petitioner found employment and, together with his wife and child, began establishing connections within his community. Dkt. 6 at ¶ 7.

On January 4, 2026, Petitioner was arrested at his home by Portland ICE ERO and transported to NWIPC. Dkt. 6 at ¶¶ 5–6; Dkt. 17 at ¶ 10; Dkt. 13-11. On January 21, 2026, after this Petition was filed, Petitioner received a bond hearing before an IJ, who determined Petitioner was subject to mandatory detention. Dkt. 17 at ¶ 11. The IJ declined to make any alternative findings regarding bond eligibility because Petitioner was subject to mandatory detention. *Id.* Petitioner remains detained at NWIPC. Dkt. 17 at ¶ 13.

**C.    Petitioner Eliedson Dos Santos-Reis**

Petitioner Dos Santos-Reis is a native and citizen of Brazil who fled political persecution and entered the United States without lawful status on September 30, 2024. Dkt. 7 at ¶¶ 1–2; Dkt. 18 at ¶ 4; Dkt. 13-13. Shortly thereafter, Petitioner was detained by Texas state law enforcement for criminal trespass. Dkt. 18 at ¶¶ 4–5. While in Texas state custody, Petitioner was encountered by ERO and transferred to ICE custody. *Id.* at ¶ 5.

A week later, Petitioner was charged as removable under Section 212(a)(6)(A)(i) of the INA, released on his own recognizance, and instructed to comply with certain supervision conditions. *Id.* at ¶ 6; Dkt. 13-12. Petitioner was also required to enroll in ATD. Dkt. 18 at ¶ 6.

On January 6, 2026, Petitioner attended an in-person check-in at an ICE office. Dkt. 7 at ¶ 4. Petitioner was arrested without "warning or explanation" and transported to the NWIPC, where he remains detained. Dkt. 7 at ¶¶ 4, 6; Dkt. 18 at ¶ 12; Dkt. 13-13.

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 4

**D.    Petitioner Eduardo Renteria Godines**

Petitioner Renteria Godines is a native and citizen of Mexico who, alongside his family, entered the United States without lawful status in January 2024. Dkt. 8 at ¶¶ 1–2; Dkt. 15 at ¶ 3; Dkt. 13-4. Following his arrival, United States Customs and Border Protection charged Petitioner as removable under Section 212(a)(7)(A)(i)(I) of the INA and scheduled him to appear before an IJ in Seattle, Washington. Dkt. 8 at ¶ 2; Dkt. 15 at ¶ 4; Dkt. 4-7; Dkt. 13-4.

Petitioner was then paroled into the United States until April 18, 2025, with instructions to report to the nearest ICE office upon his arrival in Washington. Dkt. 8 at ¶ 2; Dkt. 15 at ¶ 5. Petitioner reported to the Yakima ICE office on April 11, 2025, where he was instructed to comply with certain conditions of release, including ATD enrollment. Dkt. 8 at ¶ 2; Dkt. 15 at ¶ 7.

While released, Petitioner filed a timely application for asylum and attended scheduled hearings on that application. Dkt. 8 at ¶ 4; Dkt. 15 at ¶ 6. Petitioner's next hearing on his asylum application was set for January 2029. Dkt. 8 at ¶ 4.

On December 5, 2025, Petitioner reported to the Yakima ICE office for an appointment. Dkt 8 at ¶ 7. Petitioner was not informed of the reason for this appointment. *Id.* at ¶ 8. Petitioner was then arrested and transported to the NWIPC, where he remains detained. Dkt. 15 at ¶¶ 10, 14; Dkt. 13-4.

**E.    Petitioner Jimmy Sanchez Aguilar**

Petitioner Sanchez Aguilar is a native and citizen of Nicaragua who fled political persecution with his family and entered the United States without lawful status in November 2022. Dkt. 9 at ¶¶ 1–2; Dkt. 16 at ¶ 3; Dkt. 13-7. Petitioner turned himself into immigration authorities and was paroled into the United States until January 23, 2023, with instructions to

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 5

report to the nearest ICE office upon his arrival at his intended place of residence. Dkt. 9 at ℙ 2; Dkt. 4-9; Dkt. 4-10; Dkt. 16 at ℙ 4.

On March 20, 2023, Petitioner reported to the local ICE office where he was charged as removable under Section 212(a)(6)(A)(i) of the INA and scheduled to appear before an IJ for removal proceedings. Dkt. 16 at ℙ 6; Dkt. 13-7. Petitioner was then released on his own recognizance. Dkt. 16 at ℙ 2.

During his release, Petitioner filed an asylum application. Dkt. 9 at ℙ 4. Petitioner's wife has also applied for asylum, and the couple is expecting their first child together. Dkt. 9 at ℙ 7.

On December 15, 2025, Petitioner reported to the local ICE office for a check-in appointment. Dkt. 9 at ℙ 3. At that appointment, Petitioner was re-detained and subsequently transferred to NWIPC. Dkt. 16 at ℙ 11; Dkt. 13-8. Petitioner has since requested a bond hearing and, as of the date of Respondents' Return, he was scheduled to receive a bond hearing on February 3, 2026. Dkt. 16 at ℙ 13. However, the current record before the Court contains no information regarding the results of that hearing. *See docket.* Thus, the Court assumes that Petitioner Sanchez Aguilar remains detained at NWIPC without an individualized bond determination.

## II.      PROCEDURAL BACKGROUND

Petitioners filed the instant Petition pursuant to 28 U.S.C. § 2241 on January 16, 2026. Dkt. 1. On January 30, 2026, Respondents filed a Return arguing that Petitioners' re-detention comports with due process. Dkt. 12. On February 4, 2026, Petitioners filed a Traverse. Dkt. 19.

Petitioners allege Respondents violated constitutional guarantees of due process under the Fifth Amendment by re-detaining them without pre-deprivation notice and hearing. Dkt. 1 at 17; Dkt. 19. Respondents disagree, claiming that Petitioners' re-detention was warranted and within Respondents' statutory authority. Dkt. 12. Having reviewed the parties' arguments and the

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 6

relevant legal authority, the Court agrees with Petitioners and **GRANTS** habeas relief for the following reasons.

### III.    LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals in custody if such custody is a "violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). The Due Process Clause of the Fifth Amendment to the United States Constitution prohibits the federal government from depriving any person "of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Due process protections extend to all individuals within U.S. borders, including noncitizens, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

Procedural due process demands meaningful notice and a genuine opportunity to be heard before the federal government infringes upon a liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts in the Ninth Circuit apply the *Mathews* balancing test in immigration detention cases, weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the Government's countervailing interest, including fiscal and administrative burdens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022); *see also E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025) (collecting cases).

### IV.    DISCUSSION

All three *Mathews* factors weigh in favor of Petitioners: (1) each has a protected liberty interest against re-detention within NWIPC following their prior release, (2) the absence of pre-

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 7

deprivation procedures created an unacceptably high risk of erroneous deprivation, and (3) the governmental interest in Petitioners' re-detention without a hearing is minimal or non-existent.[2]

Respondents assert that they acted within their statutory authority to re-detain Petitioners without prior notice or hearing. *See* Dkt. 12. As Petitioners correctly argue, and courts in this District have made clear, Respondents' statutory authority to detain does not validate an invasion of Petitioners' liberty interests without constitutionally guaranteed process. *Shinwari*, 2026 WL 262605, at *3 ("As multiple courts in this district have found in similar cases, even if a particular statute or regulation does not require a pre-arrest hearing in these specific circumstances, this does not mean such a hearing is not required by Due Process.") (citations and quotations omitted); *P.T.*, 2025 WL 3294988, at *2 ("To the extent that the Government's briefing suggests that Section 1225(b) should be the beginning and end of the Court's inquiry, this position is emphatically rejected. In determining the lawfulness of Petitioner's detention, the Court will

---

[2] The application of the *Mathews* factors to the case at bar is consistent with a high volume of similar cases within the District. *See, e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1321–24 (W.D. Wash. 2025); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136–37 (W.D. Wash. 2025); *Kumar v. Wamsley*, No. 2:25-cv-01772-JHC-BAT, 2025 WL 2677089, at *3–4 (W.D. Wash. Sept. 17, 2025); *Ledesma Gonzalez v. Bostock*, No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *7–9 (W.D. Wash. Oct. 7, 2025); *P.T. v. Hermosillo*, No. 25-cv-2249-KKE, 2025 WL 3294988, at *2–4 (W.D. Wash. Nov. 26, 2025); *Francois v. Wamsley*, No. 25-cv-2122-RSM, 2025 WL 3496557, at *3–4 (W.D. Wash. Dec. 5, 2025); *Manuel v. Hermosillo*, No. C25-CV-2353-TL-MLP, 2025 WL 3690778, at *2 (W.D. Wash. Dec. 10, 2025), *report and recommendation adopted*, No. C25-2353-TL-MLP, 2025 WL 3697277 (W.D. Wash. Dec. 19, 2025); *A.C.J. v. Hermosillo*, No. 2:25-cv-02486-DGE, 2026 WL 73857, at *3–5 (W.D. Wash. Jan. 9, 2026); *Perez v. Hermosillo*, No. 25-cv-2542-RSM, 2026 WL 100735, at *6 (W.D. Wash. Jan. 14, 2026); *Yildirim v. Hermosillo*, No. 25-cv-2696-KKE, 2026 WL 111358, at *2–4 (W.D. Wash. Jan. 15, 2026); *G.S. v. Hermosillo*, No. 25-cv-2704-TSZ, 2026 WL 179962, at *3 (W.D. Wash. Jan. 22, 2026); *Torres v. Hermosillo*, No. 2:25-CV-02687-LK, 2026 WL 145715, at *6–8 (W.D. Wash. Jan. 20, 2026); *Shinwari v. Hermosillo*, No. 2:26-cv-00009-RAJ, 2026 WL 262605, at *3–4 (W.D. Wash. Jan. 30, 2026).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 8

focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.").[3]

Respondents also contend their re-detention of Petitioners complied with due process because the Government "has an interest in enforcing compliance with its orders of release on recognizance and returning individuals to custody who violate their terms." Dkt. 12 at 16. Respondents further allege that some of the Petitioners violated terms of their release. *Id.* at 5–10. This argument misses the mark.

As stated, the central issue here is *the process* by which re-detention occurred, not whether it was warranted. *Ramirez Tesara*, 800 F. Supp. 3d at 1137 ("[T]he fact that the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."); *Yildirim*, 2026 WL 111358, at *4 (noting that any factual disputes related to the justification for the petitioner's re-detention should have been resolved at a pre-deprivation hearing, not after-the-fact during habeas proceedings).

In sum, irrespective of whether re-detention was authorized or warranted, the Constitution guarantees notice and an opportunity to be heard before Petitioners Arroyo Silva, Barri, Dos Santos-Reis, Renteria Godines, and Sanchez Aguilar can be removed from their

---

[3] While Petitioners do not directly contest Respondents' statutory authority to detain under Section 1225(b) of the INA, Dkt. 19 at 2 (arguing that the asserted statutory authority is "beside the point" given the constitutional defects in the detention process), the Court notes that such claimed authority under Section 1225(b) of the INA is dubious. It is undisputed that the Petitioners in this case were released on their own recognizance and living in the United States before they were re-detained at NWIPC; this casts considerable doubt on Respondents' argument that these Petitioners are currently "applicants for admission" subject to mandatory detention under § 1225(b). *See, e.g., Herrera Gomez v. Wamsley*, No. 2:25-cv-02642-JNW, 2026 WL 279966, at *2 (W.D. Wash. Feb. 3, 2026) ("This Court has previously rejected the Government's Section 1225(b) argument and does so again here.") (citing *Ledesma Gonzalez*, 2025 WL 2841574, at *3–4).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 9

families, homes, employment, and communities. Such disruptions to the lives of these individuals are constrained by the constitutional guarantee of providing a pre-deprivation notice and hearing required by application of the *Mathews* factors in this case. *See, e.g., P.T. v. Hermosillo*, 2025 WL 3294988, at \*4 (collecting cases); *G.S.*, 2026 WL 179962, at \*3 (same). Indeed, these processes serve "as a crucial bulwark against the unfettered disregard of individual liberty interests." *Id.* at \*3.

Accordingly, the Court finds that, in re-detaining them without prior notice and an opportunity to be heard, Respondents violated Petitioners' procedural due process rights. Petitioners are, therefore, entitled to habeas relief for these constitutional deprivations.

## V.    REMEDY

As relief, Petitioners seek immediate release from custody and a permanent injunction prohibiting their re-detention without first receiving written notice and an opportunity to be heard on an individualized bond determination before a neutral decisionmaker. Dkt. 1 at 18. Respondents contend that permanent injunctive relief is not warranted because Petitioners do not sufficiently allege a threat of future harm by way of re-detention without constitutional process. Dkt. 12 at 16. The Court disagrees.

Habeas corpus relief is "at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995). The equitable roots of habeas corpus are embodied by "the statutory command that the judge, after granting the writ and holding a hearing of appropriate scope, [shall] 'dispose of the matter as law and justice require.'" *Fay*, 372 U.S. at 492 (quoting 28 U.S.C. § 2243). A habeas court is thus authorized to "fashion appropriate relief other than immediate release," *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973), in order to ensure an effective remedy for unlawful detention. *Cf. Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) ("Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 10

powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies.").

These equitable principles authorize courts not only to remedy unlawful detention through release, but also to craft forward-looking relief necessary to prevent recurrence of the constitutional violation. Where a petitioner demonstrates a cognizable danger of repeated unlawful detention, permanent injunctive relief falls within the breadth and flexibility inherent in habeas equitable powers. *See Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) ("The necessary determination [for granting a permanent injunction] is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.") (quotations omitted).

In this case, the Petition alleges a clear pattern of re-detention without sufficient process by Respondents, demonstrating that Petitioners face a continuing threat of constitutional harm throughout their removal proceedings. *See* Dkt. 1. Moreover, Respondents' own representations in this litigation lend additional proof of the ongoing threat faced by Petitioners. Dkt. 12 at 12 ("Petitioner[s'] re-detention under Section 1225(b) without a pre-detention hearing was lawful.... Although Courts in this District have held otherwise, there is no requirement for Petitioners to be given a pre-detention hearing prior to their parole being revoked and them being re-detained."). Respondents make clear that their current practices for re-detention contravene, and will continue to contravene, the constitutional principles espoused in this Order and in other court orders issued in this District. *See id.* at 12 n. 2.

Where, as here, Petitioners are detained pursuant to constitutionally deficient process and face a threat of future injury without the grant of injunctive relief, the Court finds an order of

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 11

immediate release and a permanent injunction appropriate.[4] Accordingly, the Court **GRANTS** habeas relief as set forth in the conclusion below.

### VI.    CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

(1)    Petitioners' habeas Petition (Dkt. 1) is **GRANTED**;

(2)    Respondents **SHALL release** Petitioners from custody immediately under the conditions of their prior release;

(3)    Respondents **SHALL NOT re-detain** Petitioners without advance written notice and a pre-detention hearing before a neutral decisionmaker; and

(4)    Respondents **SHALL** file a declaration within **24 HOURS** of the issuance of this Order, confirming that the Petitioners have been released from custody and providing the date and time of their release.

Finally, the Court will entertain any post-judgment motion for attorney's fees, as requested in the Petition.

Dated this 17th day of February, 2026.

Grady J. Leupold
United States Magistrate Judge

---

[4] This relief is consistent with relief fashioned by other courts in this District. *See, e.g.*, *Shinwari*, 2026 WL 262605, at *4 (ordering petitioners shall not be re-detained "unless and until" they are provided "with 10 days' written notice and a meaningful opportunity to be heard before an immigration judge to determine whether detention is appropriate."); *E.A. T.-B.*, 795 F. Supp. 3d at 1324 (ordering that petitioner "may not be re-detained until after an immigration court hearing is held (with adequate notice) to determine whether detention is appropriate"); *Francois*, 2025 WL 3063251 at *4 (ordering that petitioners "may not be re-detained until an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate."); *but see Torres*, 2026 WL 145715, at *8 (denying permanent injunction where petitioner failed to allege facts demonstrating threat of future harm).

ORDER GRANTING PETITION FOR WRIT OF
HABEAS CORPUS - 12